EDWARD PURCELL *et al.*

*v.*

THE TOWN OF BEAR CREEK.

*Filed at Springfield November 2, 1891.*

1. RAILROAD AID BONDS—*issued by a township, are a town charge.* The indebtedness incurred by a town in aid of a railroad before the adoption of the constitution of 1870, and town bonds issued for the purpose of funding the town indebtedness, which are registered in the office of the Auditor of Public Accounts, are a town charge under section 125 of the Township Organization law.

2. TOWN SUPERVISOR—*duty to receive and disburse town tax—liability on official bond.* A town tax levied by the town auditors to discharge a town liability, by the payment of some of the bonds of the town when collected, is money directed by law to be raised for a town purpose, which it is the duty of the supervisor to receive and disburse, and for which he and his sureties are liable on his official bond.

3. Where town taxes are levied and collected for the payment of registered town bonds, and paid over to the supervisor of the town, and he delivers the money to the county treasurer, who fails to apply the same in payment of such bonds, the supervisor and the sureties on his bond will be liable to the town for such money.

4. SAME—*estopped from questioning the levy and collection of tax received by him.* After the levy and collection of town taxes by the town authorities for the purpose of paying town liabilities, and receipt by the supervisor as such, he and his sureties will be estopped from calling in question the regularity of the steps taken by the town authorities to levy and collect the money.

5. SUPERVISOR'S BOND—*condition in conformity to statute.* The condition of a supervisor's bond, that if he shall faithfully discharge the duties of his office, as supervisor, required of or enjoined upon him by the laws of the State in relation to the town revenue, to the best of his skill and abilities, then the obligation to be void, otherwise to remain in full force, is in substantial conformity with the statute, and binding upon the officer and his sureties.

6. REGISTERED BONDS—*power to levy tax for payment of.* The power given the Auditor of the State to levy and collect a tax for the payment of the registered bonds of a town, does not take from the town authorities their power of making provision, by taxation, for raising money to pay such bonds. The levy by the State Auditor, and the collection which follows such levy, when town bonds have been registered, are an

additional remedy for the benefit of the creditor, leaving in full force and effect the other remedy vested in the town authorities, which may still be pursued.

7. Notwithstanding the act of 1869, and the amendments thereto, which provide for the registry of town and other municipal bonds by the State Auditor, and that he may levy taxes for their payment, which shall be collected as other State revenue, and be paid to the State Treasurer, still the board of town auditors have the power, and it is their duty, to make provision, by the levy and collection of taxes, to pay and discharge a debt incurred for railroad purposes by the town, although such debt may be evidenced by bonds registered in the Auditor's office.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Christian county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. A. THORNTON, and Mr. J. C. McBRIDE, for the appellants:

The payment by the supervisor of the money to the county treasurer, released the liability on the bond.   1 Starr & Curtis' Stat. p. 290, sec. 46; 2 id. p. 2423, sec. 101; 2 id. p. 2424, sec. 102; 2 id. p. 2428, sec. 125; 2 id. p. 2070, sec. 159; 2 id. p. 1887, sec. 23.

The Auditor was the proper person to levy the taxes in this case.   2 Starr & Curtis, p. 1891, sec. 36; *Dunnovan* v. *Green,* 57 Ill. 68; *Decker* v. *Hughes,* 68 id. 43; *Maxcy* v. *Williamson County,* 72 id. 211.

The direction to exercise a power in a particular manner excludes its exercise in any other manner.   Starr & Curtis, pp. 1884, 1885, secs. 13-16; *Mix* v. *Ross,* 57 Ill. 124; *Hardin County* v. *McFarlan,* 82 id. 139; *Middleport* v. *Insurance Co.* 82 id. 565; *Webster* v. *People,* 98 id. 349; *Gaddis* v. *Richland County,* 92 id. 123; *Locke* v. *Davison,* 111 id. 24.

The town auditors had no right to levy the taxes, because the bonds had not matured.

The condition of the bond is not in conformity with the statute.   The surety can not be held liable beyond the precise

526     Purcell *et al. v.* Town of Bear Creek.

Brief for the Appellee.     Opinion of the Court.

terms of his obligation.   *United States* v. *Bocker,* 88 U. S. 652; *People* v. *Toomey,* 122 Ill. 315; Murphree on Official Bonds, secs. 64, 65, 66, 710, 720; Cooley on Taxation, 500.

Mr. J. G. Drennan, and Mr. W. M. Provine, for the appellee:

The supervisor received the money as "town railroad bond tax," and in his annual report he charged himself with it, as such.   He and his sureties are now precluded from denying that admission.   *Chicago* v. *Gage,* 95 Ill. 626; *Morley* v. *Metamora,* 78 id. 394; *Longan* v. *Taylor,* 31 Ill. App. 263.

The levy was authorized, being for a corporate purpose. *Railroad Co.* v. *Smith,* 62 Ill. 270; *Wetherell* v. *Devine,* 116 id. 637; *Taylor* v. *Thompson,* 42 id. 9; *People* v. *Lippincott,* 81 id. 201; *Railway Co.* v. *McCleave,* 108 id. 368; *Wright* v. *Railway Co.* 120 id. 548.

The supervisor was the proper person to receive the money. 2 Starr & Curtis, p. 2424, sec. 102, chap. 136.

The payment by the supervisor to the county treasurer was not a legal payment.

The powers given in the Funding act do not abrogate the power given to the town auditors in the Township law to levy taxes to pay town liabilities.   *Lawer* v. *United States,* 91 U. S. 536; *East St. Louis* v. *Maxwell,* 99 Ill. 443.

Supervisors and sureties are estopped from questioning the right to levy the tax.   Cooley on Taxation, 499; *Coon's* v. *People,* 76 id. 383.

A bond is good if substantially in compliance with the statute.   *People* v. *Shannon,* 10 Bradw. 364; *McLain* v. *People,* 85 Ill. 205.

Mr. Justice Craig delivered the opinion of the Court:

This was an action by the town of Bear Creek, against Edward Purcell and his sureties on his official bond as supervisor of the town.   There is no substantial dispute between the

parties in regard to the facts out of which this litigation arose. On the 31st of December, 1881, the town of Bear Creek issued ten bonds, of $1000 each, due in ten years, with the option, however, of paying at the end of any year after the expiration of two years from the date of the bonds.    The bonds were issued to re-fund an indebtedness incurred by the town in aid of a railroad, and were registered in the office of the State Auditor.    On the 1st day of September, 1885, the board of town auditors levied a tax to pay two of the bonds, Nos. 5 and 6, the prior numbers having been previously paid by taxes levied and collected for that purpose by the town.    The levy was returned to the county clerk, and by him extended on the tax books, and the amount of the tax was collected by the town collector and paid over to J. D. Duncan, then supervisor.    Duncan paid the money to defendant Purcell, his successor in office.    On the same day the supervisor received the money he paid it over to the county treasurer.    It also appeared on the trial that the county treasurer died insolvent, without accounting for the money belonging to the town.    In the circuit court plaintiff recovered a judgment for the amount of the tax, and the judgment was affirmed in the Appellate Court.

It is first insisted that the supervisor had no right to accept the money, and thus involve the sureties on his bond.    Section 1, article 11, of the Revised Statutes of 1874, page 1079, provides that the supervisor, "before entering upon the duties of his office, shall give bond to the town, with one or more sureties, in at least double the amount of money which may come into his hands, conditioned for the faithful discharge of his duties as such supervisor, and that he will safely keep and pay over all money intrusted to his keeping as such supervisor."    Section 102 provides that the supervisor shall receive and pay out all moneys raised therein for defraying town charges, except those raised for the support of highways and bridges.    Section 125 is as follows:  "The following shall be

deemed town charges: First, the compensation of town officers for services rendered their respective towns; second, contingent expenses necessarily incurred for the use and benefit of the town; third, the moneys authorized to be raised by the vote of a town meeting for any town purpose; fourth, every sum directed by law to be raised for any town purpose."

If the debt was a town charge, it is plain, under section 102, it was the duty of the supervisor to receive the amount raised by taxation, and to pay out and disburse the same. Here was a debt incurred by the town, contracted by authority of law. It was a legal and binding obligation resting upon the town. By the terms of the contract under which the debt was created, the town had the right to determine that it was due. This right the town exercised by making a levy to raise funds to pay the debt, or at least two of the bonds, which constituted a part of the debt. Under clause 4 of section 125 it is expressly declared that every sum of money decided by law to be raised for any town purpose shall be deemed a town charge. The levy was made and the money raised to discharge a town liability. It was levied by town authorities, and we think it may be safely said that it was a sum of money required by law to be raised for a town purpose, within the meaning of the statute, and as such it was the duty of the supervisor to receive it.

It is also claimed in the argument, that the payment of the money by the supervisor to the county treasurer released all liability on the supervisor's bond. The bonds which the tax was levied to pay, as appears from a recitation upon their face, were issued under the provisions of an act of the General Assembly of the State of Illinois, entitled "An act to enable counties, cities, towns, townships, school districts and other municipal corporations to fund, retire and purchase their outstanding bonds and other evidences of indebtedness, and to provide for the registration of new bonds or other evidences of indebtedness in the office of the Auditor of Public Accounts,"

approved February 13, 1865, and acts amendatory thereto, approved April 27, 1877, and June 4, 1879, and in pursuance of the vote of a majority of the legal voters of the said township voting at an election duly called, held under said act, on the 5th day of April, A. D. 1881. They were also registered with the Auditor of Public Accounts, as required by the acts under which they were issued.

Section 5 of the act of June 4, 1879, contains the following provision: "The Auditor of Public Accounts shall annually ascertain the amount of principal and interest due and accrued on all such bonds, and   *   *   *   shall estimate and determine the rate per centum   *   *   *   requisite to meet and satisfy said interest, or interest and principal,   *   *   *   and the said per centum shall thereupon be deemed added to and a part of the per centum which is or may be levied or provided by law for the purposes of State revenue,   *   *   *   and said taxes shall be collected with the State taxes, and all laws relating to the State revenue shall apply thereto, except as herein otherwise provided: *Provided,* that it shall be lawful for the county collector, at any time before settlement with the State Treasurer, to pay from such taxes coupons that are due for interest," etc.

Under the act of 1865, as amended by the acts of April, 1877, and June, 1879, under which the bonds were issued, it is plain that ample provision has been made, when bonds have been registered with the Auditor, under which the Auditor may make a levy to pay both interest and principal on such bonds, and when a levy has been made by the Auditor, the taxes are required to be collected in the same manner as the State revenue. Had this course been pursued in this case, no part of the money collected would have passed into the hands of the supervisor, but, on the other hand, it would have been the duty of the town collector to pay it over to the county collector, and the county collector to the State Treasurer. But the levy was not made by the Auditor, and the steps required to be

34—138 ILL.

taken in the collection of the tax and paying it over, when the levy is made by that officer, do not seem to have any application to a case of this character. Here the levy was made by the town auditors to liquidate a debt which the town had contracted. Notwithstanding the fact that a remedy is provided under which money may be raised to pay the interest and principal of a debt of this character by a levy made by the Auditor, the law under which such a proceeding may be inaugurated has not taken from the town authorities the power it has always possessed of making provision by taxation for raising money to pay its legal obligations, and we are aware of no law which takes from the town such power. The levy by the Auditor, and the collection which follows such levy, where bonds have been registered, may be regarded as an additional remedy provided for the benefit of the creditor, leaving in full force and effect the other remedy which the town has always exercised.

In *Lower* v. *United States,* 91 U. S. 538, a petition for *mandamus* was brought to compel the board of town auditors of a certain town in Bureau county to levy and collect a tax to pay the amount of certain bonds which had been issued by the town in aid of a contemplated railroad. The board, in its answer, admitted the issue and validity of the bonds, but set up as a defense that the bonds were registered with the Auditor of Public Accounts and were payable at the office of the State Treasurer, under the act of April 16, 1869, and that the mode of collecting the bonds was fully and solely prescribed by that act. In other words, it was there claimed, as it is here, that when bonds have been registered, the only mode left for raising money to pay and discharge the bonds is that authorizing the Auditor to levy and requiring the taxes to be collected in the mode pointed out for the collection of the State revenue. But the court held that the grounds relied upon did not constitute a valid defense to the petition, and in deciding the case said: "The answer in this case presents no valid defense.

The object of the petition is to compel plaintiffs in error, as town auditors, to audit a judgment rendered against the town of Ohio upon overdue coupons attached to bonds issued by that municipal corporation, so that it can be placed in process of collection in accordance with the Illinois township law.   This law provides specially for the auditing of town charges, among which judgments are included, and for the levy of taxes to pay them.   (Rev. Stat. of Ill. 1874, p. 1080.)   But the plaintiffs in error say, that judgments like the one in question can only be collected through the mode pointed out in the Funding act of April 16, 1869.   The Funding act, originating in the nec-essities of the indebted municipalities of the State, proposed a mode to help them by the collection and disbursement of a State tax levied within their respective limits.   *   *   *   The act did not profess to change the terms of the securities, nor exempt the municipality from the obligation to pay them. They were, it is true, registered in the office of the Auditor and payable at the treasury of the State ; but relator was not required to resort only there for payment."

We have quoted quite lengthy from the case cited, as the principle involved and decided is applicable here.   The court, in effect, holds, that notwithstanding the act of 1869, which provides for the registry of the bonds with the Auditor, he may levy taxes for their payment, which shall be collected as other State revenue, and be paid into the State treasury, still the board of town auditors have the power, and it is their duty, to make provision, by the levy and collection of taxes, to pay and discharge a debt incurred for railroad purposes against the town, although such debt may be evidenced by bonds registered in the Auditor's office.   Here the levy was made by the town auditors, and the town collector paid it over to the supervisor, as it was his duty to do, and it was the plain duty of the supervisor to pay out the money in satisfac-tion of the bonds it was raised to pay.   There is no statute which authorized him to pay the money to the county treas-

urer, and as he paid over the money to a person who had no right to receive it, in disregard of his official duty, and it was lost, we see no principle upon which he and his sureties can escape liability.

It is also said the board of town auditors had no right to make the levy, because the bonds were not due. The bonds contained this provision: "This bond may be paid at the end of any year after two years, at the option of said Bear Creek township." Of course, the township had the right, under this clause, to declare the bonds due; but whether the option should be exercised by a vote of the people of the town, or whether the town auditors had the right to act in this matter, is a question which might admit of discussion, if it was properly raised by a tax-payer who was called upon to pay the tax. But no tax-payer has made any complaint, and while an irregularity may have occurred, it is one which can not be availed of by the supervisor or his sureties in an action on his official bond. After the money was levied and collected as town funds, and received by the supervisor as such, he and his sureties will be estopped from calling in question the regularity of the steps taken by the town auditors to levy and collect the money.

It is also claimed that the condition of the bond sued on is not such as is required by the statute, and the liability of the surety is limited to the exact terms of the bond. The statute requires the bond of a supervisor to be "conditioned for the faithful discharge of his duties as such supervisor, and that he will safely keep and pay over all money intrusted to his keeping as such supervisor." (2 Starr & Curtis' Stat. p. 2423, sec. 101.) The bond executed in this case was conditioned as follows: "Now, therefore, if the said Edward Purcell shall faithfully discharge all the duties of his said office as supervisor of the said town, required of or enjoined upon him by the laws of the State of Illinois in relation to the town revenue, to the best of his skill and abilities, then this obligation to be void, otherwise to remain in full force and virtue." While the

condition of the bond does not conform literally to the language of the statute, we think it does in substance conform to the requirements of the statute.

It may be a hardship to require the supervisor to bear the loss, under the facts as presented by the record, but we perceive no legal ground upon which he can be relieved.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*